Thank you. All right, our fifth case for this morning is United States against Robert Hosler. So we will have Mr. Bugney and Ms. Oswald on the phone. So if you can just confirm that you're there, then we will proceed. Ms. Oswald is on the line as well, Your Honor. All right, thank you. So you may proceed, Mr. Bugney. Mr. Bugney May it please the Court, there is one issue here. Do Hosler's two attempts to pass a message to the minor through her mother constitute a violation of 2242B? The first message was that he was excited to see her. The second message was to give her a hug. These statements do not constitute attempts to persuade, induce, or coerce the minor. They're not aimed at overcoming or transforming her will. They are statements in the very real way, tangential to the negotiations that Hosler engaged in with the mom. So Mr. Bugney, I have a question though. I mean, there's some exchange between Mr. Hosler and the alleged mother, Amanda, about what kind of gift she might like and that she likes Elsa from Frozen and he describes that he's bought a gift for her. Why isn't getting a form of enticement that he's hoping that, who he believes to be the mother, will pass this along to the girl? Two reasons. One, I think that would fall squarely within MacMillan too, where you have the communications with the parent in an attempt to have the direct persuasion or enticement or coercion once you meet with the person, once you meet the minor in person. I think that's where that would go. We don't, he didn't ask that the communications be passed onto the minor. It's clearly that all of those activities, from buying the gifts to things that she would like, would go towards the eventual assent that the minor would give when they met. But that's the second MacMillan category. It's not the third. The third is focused on what are the attempts or what are the actions across the channels of interstate commerce and instrumentalities that speak to the, you know, coercion, the enticement, and those are being directed towards the minor. Counsel, I must say I have no idea what MacMillan categories might be, but I do care about the language of the statute. And the statute talks about a person who knowingly persuades, induces, entices, or coerces. You seem to construe all of those as four synonyms for the word coerce. Why would that be the right way to understand that sequence of words? They're, they're, and I don't mean to conflate them all, but they all go towards the persuasion towards the minor. You know, the enticement would go a little bit differently. Persuasion in matters often entails gifts of, well, whatever it is the person to be persuaded wants, or it can involve money. It doesn't involve overbearing somebody's will. If I go to the grocery store, I persuade them to part with a package of toilet paper by giving them because the attempts at persuasion were towards the parent and not towards the minor. So the parent had acted as a broker. They were, they were the grocery, the parent was the grocery. If I'm the, if I'm the Dallas Cowboys, I try to persuade Dak Prescott to provide another year of service by approaching his agent and offering him money. That's, that's how persuasion happens in the world. And again, I don't understand why that sequence of words boils down to just four different ways of talking about coercion or overcoming someone's will. Because in the Dak Prescott, you, you're asking that, you know, send this message to Prescott. This is, this is what I want. And in that sense, Prescott is the, the intended beneficiary of the $150 million. In this situation, Amanda, the parent is the intended beneficiary. It's no different than the agent. Well, why do we say that? I mean, going back to Macmillan, I will give you the three situations that it outlined, although I think they were just a way of trying to make sense of the cases. But, but the third one was a direct attempt to use the parent as an intermediary to convey the message to the child. And I don't see any reason why a trier of fact in this instance, you know, it really doesn't matter. A trier of fact couldn't see all this discussion about princess dress, you know, is, is a, is precisely that. You don't have to say, and I am now asking you to pass this along to the child. That would be unduly formal. And, you know, there's all this discussion. Does she like obese men? And does she, you know, she want to meet me? I mean, there's a lot of trying to entice via the parent, the child to engage in this encounter. And believe me, I am very sympathetic to what I understand your overall argument to be. We don't want this statute to just boil down to a statute that prohibits arranging for minors to have sex with other people using the instrumentalities of commerce. It has specific words. They should mean something, but entice is, is a pretty broad word and gifts and, you know, physical attractiveness and other sorts of things seem to me not strained if we think of that as enticing. And I agree with you, but I think it goes towards the enticement of when they finally do meet. Why? And that's where it would, because otherwise the distinctions are collapsed. In one sense, all activities, unless they're in the most mercenary sense, are going to be got towards that final meeting when the, when the person will finally meet the minor and have sex with her. But let me, let me just push back a little bit. I can certainly see if the only thing Mr. Hosler was talking about with Amanda was the price, you know, it'll be X dollars. And she says, no, I want two X and, you know, and they haggle about the price. I can certainly see that Gracie is not involved in that. She's not going to see the money. Something like an Elsa dress, you know, or not being too fat seems to me directed, or at least a trier fact could view that as directed through the parent to the minor. And so there is a meaningful distinction here. I think the meaningful distinction in one sense, it's a checklist of what the, the officer said, you know, are you, you know, are you obese? And he's like, no, I'm not obese. Are, you know, are you short? No, I'm tall. Like those aren't things that are meant to persuade the minor. If we think of this statute as it's, as it was written, why does the mother care if he's obese or not? She probably wants the money. She probably does, but she also doesn't want to deal with any, look, this is a grotesque analogy, but she also doesn't want to deal with the pushback of her daughter. It's all a fiction, but there is a sense of like, I'm going to, you know, curtail this down to what my daughter will accept, you know? And in that sense, she has an incentive as well to make it so that Hostler matches what her daughter might want, but that doesn't change the statute, what the statute demands. The statute demands that he's directing this towards the minor and directing it across the instrumentalities of interstate commerce. And that's not what he's doing. He's simply engaging in the negotiations and the mother is telling him, hey, when you do finally get here, here are the things that you should also do, or here are the things that would make it a little bit more attractive. And I don't think that saying you're not obese is sort of is enticing or coercing. It's no different than trying to make it so that he fits within what the daughter would accept. Okay. If you want to save a little rebuttal time, we're down to two minutes. Yes. Okay. Ms. Oswald. Thank you. May it please the court, Barbara Oswald on behalf of the United States. Mr. Hostler cannot overcome the nearly insurmountable hurdle of showing that the evidence was insufficient in this case. But wait a minute, Ms. Oswald, I wouldn't jump right to that because we have a question of statutory interpretation here, which is not part of that insurmountable obstacle. And I'll be very frank with you that I am concerned that particularly with these stings, we've gotten pretty far afield from attempt to persuade, induce, entice or coerce. I totally take the point. These are all in the alternative and attempt to persuade the mire. But that needs to be something other than just I've arranged the transaction because then you've read all of those words out of the statute. You have nothing directed toward the minor. I understand the court's concern and I, in this case, that is not what the evidence shows. And that's not what the government's interpretation of the statute is. In this case, you actually have a defendant who is trying to entice, persuade, induce the minor to have sex with him. And he's using the parent as a conduit to that. As the district court properly characterized the evidence, this defendant was attempting to communicate with Gracie using the parent as a conduit to show that he was not obese, that he was kind, that he was fun, that he was generous, so that she would agree to have sex with him. And I can point to a specific example that sort of in a nutshell demonstrates that this is exactly what the statute prohibits. On August 28th, Hofstra reaches out to Amanda Pearson and asks her how she's doing, how is Gracie doing? And he says, I can't wait to see you two. I'm nervous, but excited to meet Gracie. And then he asks, is Gracie nervous about meeting or have you not told her? So at this point, he doesn't know what Gracie's mental state is. And he's asking, what's her reaction? What's she thinking? Is she going to assent to this? And Pearson tells him, she knows about you, but I haven't told her because I don't know if you're actually going to come. Like, I didn't know if you'd back out or not. And he says to her, I'd like to put something down, meaning I would like to pay you some money, because there were some conversations about him paying rent and some other things, helping the family financially. So I'd like to put something down. And he says that in part to show Pearson that he's serious, but he also says, I want to show Gracie, I want to offer you this money to show Gracie how a person is supposed to act and treat her. Because if this works out, and I think it will, she can come down and spend time with me. This is him attempting to induce Gracie directly, not induce Pearson, not negotiate with Pearson, but induce Gracie to agree to have sex with him. And then he says, what was her reaction when you told her? Because I want her to want this. Otherwise, it would not be enjoyable for either party. In other words, he's saying, I want to obtain her assent. And if you look at the communications between Hostler and Pearson as a whole, it is very clear that he is not just negotiating with Pearson, but he is attempting to make himself enticing to Gracie so that she will agree to meet him and have sex with him. Does it matter that there doesn't seem to be any evidence that any of these messages, aside from the two very innocuous ones, give Gracie a big hug for me and will tell her the feeling is mutual? So other than that, is there any evidence that this gets beyond Amanda and gets through to Gracie? I realize we're living in this fictional world, but where is the evidence that does Amanda ever say, and I told Gracie this for you, or something of that sort? Well, first of all, I would say that that's not required. Obviously, it's the defendant's intent. He intends that this information be communicated to Gracie. And again, based on her, Amanda told him... Let me clarify, because the statute requires a showing that he has attempted to... I'll just use the word entice. He's attempted to entice the minor. He's not trying to entice the adult who's the intermediary, so to speak. So we need to make sure that we have proof that he's attempting to entice the minor. And otherwise, again, we've just collapsed this statute into a very different law. Correct. And again, it's clear from the communications that he is attempting to get the parents to communicate information to Gracie, right? So he says, I want to offer you that I'm serious and that I'm a generous person so that she'll agree to have sex with him. He, at one point, asked to face... I'm sorry, to chat or email with her. And he said, I want to talk to her. I have presence for her. He knows that Amanda Pearson told Gracie that he has presence for her. And he also, at some point, was talking with once they got to Wisconsin. He specifically said, when Gracie's going to be home from school today, I want you to check with her because I want to do what she wants to do when I get to Wisconsin. I want to do fun things with her, so I need to know from her what kinds of fun things she wants to do. Again, he's trying to make himself enticing to Gracie, and he's using Pearson to communicate with Gracie because he's not allowed to communicate directly with Gracie. Pearson won't let him. There's another point early in the conversation where Pearson says to him something like... He had asked about what sorts of sexual conduct Gracie would be willing to engage in or enjoy or something like that. Pearson says to him, well, before I answer that question, I need to know what kinds of things you're interested in. She says, just because we want to make sure we're on the same page or something like that. It's clear that he's not just negotiating with Pearson. Pearson is, I believe in Judge Easterbrook's words, Pearson is a broker for Gracie, and she is negotiating on behalf of Gracie. It's very clear that Hostler is expecting that that information is a two-way street, that he's providing information to Pearson, Pearson's to Gracie, and back the other way. This case really is indistinguishable from Macmillan. It really is. As in Macmillan, Hostler responded to an ad purportedly by a parent offering a willing child for sex. In Macmillan, this court identified three specific communications that it saw as evidence of attempted enticement. Those same types of communications exist here. In both cases, the defendants offered something they thought would be enticing to the child. In Macmillan, it was a picture of the defendant's penis. In this case, Hostler offered presents. He offered specifically money to demonstrate to Gracie on how she ought to be treated. He offered assurances that he wasn't obese. He offered to come to Wisconsin because Gracie was more comfortable with that. He promised to be gentle and go slow. He offered these things were intended to be enticing and inducing to Gracie. In Macmillan, the defendant asked to communicate with the child directly. We have that here with Hostler. He asked if he could chat or email with Gracie. Now, Hostler dismisses that as just an attempt to verify that Gracie was real. Early on, he asked to FaceTime or something to verify. That could be potentially viewed as an attempt to verify that Gracie was real or that Pearson wasn't a law enforcement officer. It could also reasonably be viewed as an attempt by him to communicate directly with Gracie to make sure that she was in fact willing to have sex with him before he laid out money to come to Wisconsin. He later requested to chat or email directly with her. It's important to note that came in the context of a conversation in which he asked Pearson whether or not Gracie knew he was coming. Pearson said she was skeptical he was actually going to follow through. She hadn't told Gracie yet. She was probably going to do it that night. In response to that, Hostler says, is there any way I could chat or email with her? Do I have to wait until I get there? I'm sure she's going to be thrilled. I'm going to be bringing her presents. It's impossible to view that as anything but an attempt by Hostler to try to entice Gracie directly. It's indistinguishable from the request made by the defendant in Macmillan, which this case the defendant asked whether the parent had talked to the child about it. Hostler asked that question several times. Have you talked to Gracie yet? What was her reaction? What does Gracie think about it all? This is not a case where the defendant is uncaring about the child's mental state or uninterested or oblivious to it. The evidence here shows that Hostler is very focused on Gracie's mental state and whether or not she's intending to have sex with him. He really wants to be on board with this and we know that because he says so. I want her to want this. I want her to do this voluntarily. In other words, I want to gain her assent. All right. I think you've made your point and you are out of time. We will thank you and go back to Mr. Bugney for his rebuttal. You have about two minutes. Thank you, Your Honor. Two things. First, I tried this case and I don't remember all of those statements that the government has now found only two statements where Mr. Hostler did that. I would also direct the court's attention to page 33 of the trial transcript where the detective says, no, that was to verify whether or not I was real, his attempt to FaceTime. It's on page 33. I would also add, Your Honor, that this is distinguishable from McMillan. In McMillan, the defendant actually put out an ad. Here, Hostler is responding to an ad. It's a distinction with a difference because there he's trying to persuade the 16-year-old in McMillan, the 16-year-old's father, hey, let me have sex with your daughter. We don't have all of the transcripts and everything that was said there. It was a jury trial, I think, two days. The court picked out the lines that it fought. There was clearly a backing out because, hey, would she like this? Is this what she needs to be persuaded? You didn't use the word persuaded in the opinion. But it's there that the penis pick is going to be something that might induce her. Here, we don't have that. We don't have anything that says she's unwilling, Gracie's unwilling, and now I would like to sweeten the deal. I would like to do something that would entice her. Mr. Bugney, let me just note, though, that the trial court's findings of fact, to which we owe deference, said exactly the opposite of what you just said, which leads to the second reason to reject this theory of defense. It just doesn't match the facts of the case. Gracie did need to be persuaded or induced, and Hosler attempted to do so. So he goes through the things that we've been talking about, the I'm not obese, that he's kind, fun, and generous, those kinds of things. So we do owe some deference to those fact findings. And I think those fact findings are actually grounded in a legal error in that he's conflating, inducing over the channels of interstate commerce with what actually has to happen when they meet. And he's very clear with that. Everybody has to assent. He still has to get her assent at the moment they meet. And that's what that's geared towards, is that final meeting. And this court was clear that doesn't fit within the statutory text. And I know what Judge Easterbrook said about the three MacMillan categories. MacMillan lays it out. This is how the case law is gone. And we're going with the third, the most narrow, because that's the one that's most faithful to text and doesn't collapse everything. Because really, MacMillan 2, the second category, you have to have assent when you go and meet this person, this child. And if that's all that's demanded, then everything violates the statute, because all of the conduct with the agent and Amanda is going towards when they finally meet. Okay. I think we're going to have to stop it at that point. But I believe we certainly have your argument. So thank you, Mr. Bugney. Thank you, Ms. Oswald. The court will take this case under advisement. Thank you.